**JUDGE HOLWELL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC, AS
SUCCESSOR-IN-INTEREST TO MORGAN
STANLEY MORTGAGE CAPITAL INC.,

   Plaintiff,

v.

FREMONT INVESTMENT & LOAN,

   Defendant.

---

OCT 23 2007
U.S.D.C. N.Y.
CASHIERS

COMPLAINT

**07 CIV 9457**

Plaintiff Morgan Stanley Mortgage Capital Holdings LLC ("Plaintiff"), as successor-in-interest to Morgan Stanley Mortgage Capital Inc. ("MSMCI"), by and through its undersigned attorney, hereby files this Complaint against Defendant Fremont Investment & Loan ("Fremont"), and alleges as follows:

## INTRODUCTION

1. This lawsuit arises out of a series of written agreements entered into between the parties pursuant to which MSMCI purchased residential mortgage loans from Fremont between May 1, 2005 and December 28, 2006. As part of the written agreements, Fremont made certain representations and warranties as to each individual mortgage loan. In connection therewith, Fremont further agreed that, upon notification or discovery of a breach of such a representation or warranty which materially and adversely affected the value of the mortgage loans or the interest of MSMCI therein, Fremont would use its best efforts promptly to cure such breach or, if it could not be cured, Fremont would repurchase the loan upon demand by MSMCI. In addition,

Fremont further agreed to indemnify MSMCI for any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and other costs and expenses resulting from a breach of any representation or warranty contained in these agreements. MSMCI learned that there were breaches of those representations and warranties with respect to hundreds of mortgage loans MSMCI purchased from Fremont which materially and adversely affected the value of those mortgage loans or the interest of MSMCI therein. MSMCI gave written notice to Fremont of such breaches in accordance with the agreements. Notwithstanding its obligations under the agreements, and MSMCI's notification and demands, Fremont has failed or refused to cure or repurchase the overwhelming majority of those mortgage loans. In addition, Fremont has not indemnified MSMCI for its losses resulting from such breaches of those representations and warranties. As a result of Fremont's failure or refusal to cure or repurchase such mortgage loans and reimburse MSMCI in accordance with its obligations, Plaintiff has suffered damages in excess of $10 million.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is proper in this District and this Court has personal jurisdiction over Fremont pursuant to 28 U.S.C. § 1391(a) and by Fremont's written consent and waiver of any objection to jurisdiction and venue in this District and this Court for any legal proceedings

relating to the contracts between Fremont and MSMCI at issue in this lawsuit. *See* Exhibits A-D, at § 31(A) and (B).[1]

## THE PARTIES

4. Plaintiff is a New York corporation with its principal place of business at 1585 Broadway, New York, New York 10036. Plaintiff is the successor-in-interest to MSMCI.

5. Defendant is a California corporation with its principal place of business at 2727 East Imperial Highway, Brea, California 92821. Defendant is a California chartered industrial bank.

## FACTUAL BACKGROUND

6. Fremont is, and/or was, in the business of mortgage lending, including originating residential mortgage loans that it would package and sell as a pool of loans to the secondary market.

7. On or about May 1, 2005, Fremont and MSMCI entered into a Mortgage Loan Purchase and Warranties Agreement ("MLPA"). This agreement set forth the terms by which MSMCI would purchase certain residential mortgage loans originated by Fremont. A true and correct copy (without exhibits) is attached hereto as Exhibit A. Subsequently, on or about August 1, 2005, Fremont and MSMCI entered into a First Amended and Restated Mortgage Loan Purchase and Warranties Agreement ("First MLPA"). A true and correct copy (without exhibits) is attached hereto as Exhibit B. On or about November 1, 2006, Fremont and MSMCI

---

[1] The consent to jurisdiction and venue provision is contained in § 31(A) and (B) of each of the following contracts, which are attached hereto as Exhibits A-D: Mortgage Loan Purchase and Warranties Agreement; First Amended and Restated Mortgage Loan Purchase and Warranties Agreement; Second Amended and Restated Mortgage Loan Purchase and Warranties Agreement; and Third Amended and Restated Mortgage Loan Purchase and Warranties

entered into a Second Amended and Restated Mortgage Loan Purchase and Warranties Agreement ("Second MLPA"). A true and correct copy (without exhibits) is attached hereto as Exhibit C. Thereafter, on or about December 18, 2006, Fremont and MSMCI entered into a Third Amended and Restated Mortgage Loan Purchase and Warranties Agreement ("Third MLPA"). A true and correct copy (without exhibits) is attached hereto as Exhibit D. The foregoing agreements between Fremont and MSMCI shall be referred to, collectively, as the Purchase Agreements.[2]

8. In the Purchase Agreements, Fremont made certain representations and warranties as to each individual mortgage loan. These representations and warranties are contained in Section 9 of each of the Purchase Agreements. Fremont's representations and warranties include, *inter alia*, in relevant part, that as of the closing date for each mortgage loan:

(a) The information set forth in the related Mortgage Loan Schedule is complete, true and correct. (*See, e.g.*, MLPA Subsection 9.02(a).)

(b) There are no defaults in complying with the terms of the mortgage, and all taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable. (*See, e.g.*, MLPA Subsection 9.02(c).)

---

Agreement.
[2] Capitalized terms used herein and not otherwise defined shall have the same meaning as ascribed thereto in the Purchase Agreements.

(c) All buildings or other improvements upon the mortgaged property are insured by a generally acceptable insurer against loss by fire, hazards of extended coverage and such other hazards as are provided for in Fremont's underwriting guidelines and by lenders of similar mortgage loans in the secondary market. All individual insurance policies contain a standard mortgagee clause naming Fremont and its successors and assigns as mortgagee, and all premiums thereon have been paid and such policies may not be reduced, terminated or cancelled without 30 days' prior written notice to the mortgagee. (*See, e.g.*, MLPA Subsection 9.02(f).)

(d) The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a mortgage loan has taken place on the part of any person, including without limitation, the mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the mortgage loan or in the application for any insurance in relation to such mortgage loan. Fremont has reviewed all of the documents constituting the servicing file and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth therein. (*See, e.g.*, MLPA Subsection 9.02(k).)

  (e) The mortgage loan was underwritten in accordance with Fremont's underwriting guidelines. (*See, e.g.*, MLPA Subsection 9.02(v).)[3]

  (f) Unless otherwise specified on the related Mortgage Loan Schedule, the mortgagor represented at the time of origination of the mortgage loan that the mortgagor would occupy the mortgaged property as the mortgagor's primary residence. (*See, e.g.*, MLPA Subsection 9.02(w).)

  (g) No information, statement, tape, diskette, report or other document furnished or to be furnished pursuant to this Agreement or any Reconstitution Agreement or in connection with the transactions contemplated hereby (including any Securitization Transfer or Whole Loan Transfer) contains or will contain any untrue statement of fact or omits or will omit to state a fact necessary to make the statements contained herein or therein not misleading. (*See, e.g.*, MLPA Subsection 9.01(i).)

  9. Subsection 9.03 of each Purchase Agreement sets forth the remedies for a breach of the representations and warranties and provides in relevant part that:

  (a) As between MSMCI and Fremont, upon discovery of any breach of the applicable representations and warranties, the discovering party will provide prompt written notice to the other party;

  (b) Within 60 days of the earlier of either discovery by or notice to Fremont of any breach of a representation or warranty which materially and adversely affects the value of the Mortgage Loans or the interest of MSMCI therein (or which materially and adversely affects

---

[3] Subsection 9.02(v) is reserved in the Third MLPA.

the value of the applicable Mortgage Loan or the interest of MSMCI in the related Mortgage Loan in the case of a representation and warranty relating to a particular Mortgage Loan), Fremont shall use its best efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, Fremont shall, at MSMCI's option, repurchase such Mortgage Loan at the Repurchase Price; and

      (c)    In addition to its obligation to repurchase the loans, Fremont is required to indemnify MSMCI against any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from a breach of any representation or warranty contained in the Purchase Agreement.

10.    MSMCI learned that there were breaches of the representations and warranties contained in Section 9 of the Purchase Agreements with respect to hundreds of mortgage loans MSMCI purchased from Fremont and, upon discovery, MSMCI gave prompt written notice to Fremont of such breaches in accordance with Subsection 9.03 of the Purchase Agreements.

11.    Each breach of the applicable representation and warranty identified in Section 9 of the Purchase Agreements materially and adversely affects the value of the applicable mortgage loans or the interest of MSMCI therein, thus triggering the requirement in Subsection 9.03 for Fremont to cure and/or repurchase such mortgage loans upon either discovery by or notice to Fremont of such breach and to indemnify MSMCI for any losses.

12.    Between May 1, 2005 and December 28, 2006, MSMCI purchased mortgage loans from Fremont pursuant to the terms and conditions of the Purchase Agreements. As to

each of the purchased mortgage loans, Fremont made the representations and warranties contained in Section 9 that, upon discovery by or notice to Fremont of a breach of such a representation or warranty, which materially and adversely affected the value of the mortgage loans or the interest of MSMCI therein, Fremont would either cure such breach or repurchase such mortgage loan and indemnify MSMCI for any related losses.

13. On December 21, 2006, in conjunction with a purchase of mortgage loans pursuant to the Third MLPA, MSMCI and Fremont entered into a separate letter agreement ("Letter Agreement") providing for certain additional obligations in connection with such purchase. At the time of such purchase, MSMCI was aware of one, but only one, breach of a loan-level representation and warranty: That the mortgage properties, at the time of MSMCI's purchase, failed to have the requisite hazard insurance required by Subsection 9.02(f). Therefore, in conjunction with the sale, in order for Fremont to comply with Subsection 9.02(f), the parties entered into the Letter Agreement. A true and correct copy of the Letter Agreement (without exhibits) is attached hereto as Exhibit E.

14. The Letter Agreement required Fremont, among other things, to obtain hazard insurance coverage in compliance with Subsection 9.02(f) of the Third MLPA. Fremont represented that it either (i) requested or will request the related mortgagor to obtain adequate hazard insurance coverage or (ii) has force-placed or will force-place adequate hazard insurance coverage. *See* Letter Agreement at ¶ 2. Paragraph 5 of the Letter Agreement required Fremont to promptly provide evidence that the actions described therein had been taken and that the deficiencies with respect to the affected mortgage loans had been cured.

15. The Letter Agreement further provides that in the event that Fremont fails to cure any such deficiency with respect to the affected mortgage loans, the provisions of Subsection 9.02 of the Third MLPA, as applicable, shall apply to the repurchase of such mortgage loans. *See* Letter Agreement at ¶ 5. Paragraph 6 of the Letter Agreement provides that, notwithstanding Fremont's failure to cure deficiencies with respect to the affected mortgage loans, MSMCI may withhold its request to direct Fremont to repurchase. In such case, in the event the Successor Servicer is directed to obtain a new hazard insurance policy, Fremont remains liable under the terms of the Letter Agreement for the cost of force-placing a new hazard insurance policy or any applicable lack of coverage or underinsurance with respect to any of the affected mortgage loans. *See* Letter Agreement at ¶ 6.

16. Subsequent to purchasing the loans, MSMCI learned that hundreds of loans, including the loans referenced in Exhibit F, were in breach of the representations and warranties set forth in Section 9 of the Purchase Agreements, which breaches materially and adversely affected the value of the applicable mortgage loans or the interest of MSMCI therein, and that, in addition, certain mortgage loans, including the loans referenced in Exhibit F, were not in compliance with the requirements of the Letter Agreement.

17. These breaches included, among other things:

   (a) misrepresentations of the income or employment of the borrower in the loan documents (*See, e.g.*, MLPA Subsection 9.02 (a), (k), and (v));

   (b) misrepresentations concerning appraisal values (*See, e.g.*, MLPA Subsection 9.02 (a), (k), and (v));

 (c) misrepresentations of the occupancy of the residence (*See, e.g.*, MLPA Subsection 9.02 (a), (k), and (w));

 (d) misrepresentations of the assets of the borrower (*See, e.g.*, MLPA Subsection 9.02 (a), (k), and (v));

 (e) misrepresentations of the condition of the property (*See, e.g.*, MLPA Subsection 9.02 (a), (k), and (v));

 (f) loans failing to meet Fremont's underwriting guidelines, such as a failure to verify assets prior to closing, defective verification of rent, failure to obtain the minimum credit history information, and loans made to borrowers that did not have the requisite credit score (*See, e.g.*, MLPA Subsection 9.02 (v));

 (g) failure of Fremont to obtain hazard insurance (*See, e.g.*, Third MLPA Subsection 9.02 (f)); and

 (h) failure of Fremont to advance funds for payment of real estate taxes associated with the property (*See, e.g.*, Third MLPA Subsection 9.02 (c)).

18. In each instance, MSMCI gave Fremont written notice of these breaches on the respective dates specified in Exhibit F, as required by Subsection 9.03 of the Purchase Agreements, and demanded that Fremont either cure the breaches or repurchase those mortgage loans.

19. Although required to do so under the clear and unambiguous terms of the Purchase Agreements, Fremont has neither cured the breaches nor repurchased those mortgage

loans, nor has Fremont indemnified MSMCI for its losses resulting from the breaches. As a result, Plaintiff has suffered damages in excess of $ 10 million.

20. MSMCI was not alone in recognizing the unusual number of problems with Fremont's lending practices. In fact, the Massachusetts Attorney General filed a lawsuit on or about October 5, 2007, alleging, among other things, that Fremont "fail[ed] to supervise, monitor, or otherwise take reasonable measures to oversee mortgage brokers upon whom Fremont relied to sell its loans, including by failing to verify information provided by mortgage brokers such as borrowers' income and credit scores" and further that Fremont made "loans based on information that [it] knew or should have known was inaccurate or false, including, but not limited to, borrowers' income, property appraisals, and credit scores." *Commonwealth of Massachusetts v. Fremont Investment & Loan, and Fremont General Corp.*, 07-4373, Suffolk Superior Court, Commonwealth of Massachusetts, Complt. ¶ 139 (e) and (f). Earlier, in March 2007, the FDIC issued a cease and desist order against Fremont because of its lending practices. *See* Press Release, Federal Deposit Insurance Corporation, *FDIC Issues Cease and Desist Order Against Fremont Investment & Loan, Brea, California, and its Parents* (March 7, 2007).

### DEFENDANT BREACHES THE MORTGAGE LOAN PURCHASE AND WARRANTIES AGREEMENT, MAY 1, 2005

21. On or about May 27, 2005, MSMCI purchased from Fremont a package of loans pursuant to the MLPA.

22. On or about July 31, 2007, MSMCI notified Fremont in writing that there was a breach of, *inter alia*, Subsection 9.02 (a), (k) and (w) with respect to certain identified mortgage loans and that such breach materially and adversely affected the value of the mortgage loans or

the interest of MSMCI therein. In accordance with Subsection 9.03 of the MLPA, MSMCI demanded that Fremont cure the breaches or promptly repurchase the mortgage loans.

23. Despite its obligations under the MLPA, Fremont has neither cured the breaches nor repurchased those mortgage loans, each of which is identified in Exhibit F, nor has Fremont indemnified MSMCI for its losses resulting from the breaches.

### DEFENDANT BREACHES THE FIRST AMENDED AND RESTATED MORTGAGE LOAN PURCHASE AND WARRANTIES AGREEMENT, AUGUST 1, 2005

24. On or about August 30, 2005, MSMCI purchased from Fremont a package of loans pursuant to the First MLPA.

25. On or about September 18, 2006, MSMCI notified Fremont in writing that there was a breach of, *inter alia*, Subsection 9.02 (a), (k) and (v) with respect to certain identified mortgage loans and that such breach materially and adversely affected the value of the mortgage loans or the interest of MSMCI therein. In accordance with Subsection 9.03 of the MLPA, MSMCI demanded that Fremont cure the breaches or promptly repurchase the mortgage loans.

26. MSMCI discovered further breaches of the MLPA with respect to additional mortgage loans and that such breaches materially and adversely affected the value of such mortgage loans or the interest of MSMCI therein. On or about September 29, 2006 and October 2, 2006, in accordance with Subsection 9.03 of the MLPA, MSMCI notified Fremont in writing that there was a breach of, *inter alia*, Subsection 9.02 (a), (k) and (v) with respect to these additional mortgage loans and that such breach materially and adversely affected the value of the mortgage loans or the interest of MSMCI therein. MSMCI demanded that Fremont cure the breaches or promptly repurchase the mortgage loans.