statement of fact or omits or will omit to state a fact necessary to make the statements contained herein or therein not misleading;

        (j)    <u>Financial Statements</u>.  The Seller has delivered to the Purchaser, if requested, financial statements as to its last three complete fiscal years and any later quarter ended more than 60 days prior to the execution of this Agreement. All such financial statements fairly present the pertinent results of operations and changes in financial position for each of such periods and the financial position at the end of each such period of the Seller and its subsidiaries and have been prepared in accordance with generally accepted accounting principles of the United States consistently applied throughout the periods involved, except as set forth in the notes thereto. In addition, the Seller has delivered information as to its loan gain and loss experience in respect of foreclosures and its loan delinquency experience for the immediately preceding three-year period, in each case with respect to mortgage loans owned by it and such mortgage loans serviced for others during such period, and all such information so delivered shall be true and correct in all material respects. There has been no change in the business, operations, financial condition, properties or assets of the Seller since the date of the Seller's financial statements that would have a material adverse effect on its ability to perform its obligations under this Agreement;

        (k)    <u>No Brokers</u>.  The Seller has not dealt with any broker, investment banker, agent or other person that may be entitled to any commission or compensation in connection with the sale of the Mortgage Loans;

        (l)    <u>Sale Treatment</u>.  The Seller has been advised by its independent certified public accountants that under generally accepted accounting principles the transfer of the Mortgage Loans may be treated as a sale on the books and records of the Seller and the Seller has determined that the disposition of the Mortgage Loans pursuant to this Agreement will be afforded sale treatment for tax and accounting purposes;

        (m)    <u>Reasonable Purchase Price</u>.  The consideration received by the Seller upon the sale of the Mortgage Loans under this Agreement constitutes fair consideration and reasonably equivalent value for the Mortgage Loans;

        (n)    <u>Seller's Origination</u>.  The Seller's decision to originate any mortgage loan or to deny any mortgage loan application is an independent decision based upon Seller's underwriting guidelines, and is in no way made as a result of Purchaser's decision to purchase, or not to purchase, or the price Purchaser may offer to pay for, any such mortgage loan, if originated;

        (o)    <u>Compliance with Anti-Money Laundering Laws</u>.  The Seller has complied with all applicable anti-money laundering laws, regulations and executive orders including without limitation the USA Patriot Act of 2001 (collectively, the "<u>Anti-Money Laundering Laws</u>"); as and to the extent applicable to the Seller, the Seller has established an anti-money laundering compliance program as required by the Anti-Money Laundering Laws and has conducted the requisite due diligence in connection with the origination of each Mortgage Loan for purposes of the Anti-Money Laundering Laws, including with respect to the legitimacy of the applicable Mortgagor and the origin of the assets used by the said Mortgagor to purchase the

-21-

property in question, and maintains, and will maintain, sufficient information to identify the applicable Mortgagor for purposes of the Anti-Money Laundering Laws. Additionally, no Mortgage Loan is subject to nullification pursuant to Executive Order 13224 (the "Executive Order") or the regulations promulgated by the Office of Foreign Assets Control of the United States Department of Treasury (the "OFAC Regulations") or in violation of the Executive Order or the OFAC Regulations; and no Mortgagor is subject to the provisions of such Executive Order or the OFAC Regulations nor listed as a "blocked person" for purposes of the OFAC Regulations;

(p)    Owner of Record.  The Seller is the owner of record of each Mortgage and the indebtedness evidenced by each Mortgage Note, except for the Assignments of Mortgage which have been sent for recording, and upon recordation the Seller will be the owner of record of each Mortgage and the indebtedness evidenced by each Mortgage Note, and upon the sale of the Mortgage Loans to the Purchaser, the Seller will retain the Mortgage Files with respect thereto in trust only for the purpose of servicing and supervising the servicing of each Mortgage Loan; and

(q)    Credit Reporting.  The Seller, as servicer, will fully furnish, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (e.g., favorable and unfavorable) on its borrower credit files to Equifax, Experian and Trans Union Credit Information Company (three of the credit repositories), on a monthly basis.

Subsection 9.02    Representations and Warranties Regarding Performing Loans.

The Seller hereby represents and warrants to the Purchaser that, as to each Performing Loan, as of the related Closing Date for such Performing Loan, other than as disclosed to the Purchaser in the related Assignment and Conveyance, the related Servicing File or the servicing comments delivered to the Purchaser in connection with the Purchaser's due diligence with respect to any Performing Loan prior to purchasing such Performing Loan:

(a)    Performing Loans as Described.  The information set forth in the related Mortgage Loan Schedule is complete, true and correct;

(b)    Payments Current.  Except as set forth on Exhibit A to the related Assignment and Conveyance, no payment required under the Performing Loan is one calendar month or more delinquent;

(c)    No Outstanding Charges.  Except as set forth on the related Mortgage Loan Schedule, there are no defaults in complying with the terms of the Mortgage, and all taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable.  The Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Performing Loan, except for interest accruing from the date of the Mortgage Note or date of disbursement of

-22-

the Performing Loan proceeds, whichever is earlier, to the day which precedes by one month the Due Date of the first installment of principal and interest, including, without limitation, taxes and insurance payments, the Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Performing Loan;

(d)  <u>Original Terms Unmodified</u>.  The terms of the Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any respect, from the date of origination except by a written instrument which has been recorded, if necessary to protect the interests of the Purchaser, and which has been delivered to the Custodian or to such other Person as the Purchaser shall designate in writing, and the terms of which are reflected in the related Mortgage Loan Schedule.  The substance of any such waiver, alteration or modification has been approved by the issuer of the title insurer, if any, to the extent required by the policy, and its terms are reflected on the related Mortgage Loan Schedule, if applicable.  No Mortgagor has been released, in whole or in part, except in connection with an assumption agreement, approved by the issuer of the title insurer, to the extent required by the policy, and which assumption agreement is part of the Mortgage File delivered to the Custodian or to such other Person as the Purchaser shall designate in writing and the terms of which are reflected in the related Mortgage Loan Schedule;

(e)  <u>No Defenses</u>.  The Performing Loan is not subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto, and no Mortgagor was a debtor in any state or federal bankruptcy or insolvency proceeding at, or subsequent to, the time the Performing Loan was originated;

(f)  <u>Hazard Insurance</u>.  Pursuant to the terms of the Mortgage, all buildings or other improvements upon the Mortgaged Property are insured by a generally acceptable insurer against loss by fire, hazards of extended coverage and such other hazards as are provided for in the Underwriting Guidelines and by lenders of similar mortgage loans in the secondary market.  If required by the National Flood Insurance Act of 1968, as amended, each Performing Loan is covered by a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration in effect which policy conforms to those obtained by prudent mortgage lending institutions which originate mortgage loans of the same type as such Performing Loan in the jurisdiction where the related Mortgaged Property is located.  All individual insurance policies contain a standard mortgagee clause naming the Seller and its successors and assigns as mortgagee, and all premiums thereon have been paid and such policies may not be reduced, terminated or cancelled without 30 days' prior written notice to the mortgagee.  The Mortgage obligates the Mortgagor thereunder to maintain the hazard insurance policy at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor.  Where required by state law or regulation, the Mortgagor has been given an opportunity to choose the carrier of the required

-23-

hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering a condominium, or any hazard insurance policy covering the common facilities of a planned unit development. The hazard insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of the Purchaser upon the consummation of the transactions contemplated by this Agreement. The Seller has not engaged in, and has no knowledge of the Mortgagor's having engaged in, any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of such policy including, without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(g)    Compliance with Applicable Laws.    Any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity and disclosure laws applicable to the Performing Loan have been complied with, the consummation of the transactions contemplated hereby will not involve the violation of any such laws or regulations, and the Seller shall maintain in its possession, available for the Purchaser's inspection, and shall deliver to the Purchaser upon demand, evidence of compliance with all such requirements;

(h)    No Satisfaction of Mortgage.    The Mortgage has not been satisfied, canceled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, except as required by a title insurer, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission. The Seller has not waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Performing Loan to be in default, nor has the Seller waived any default resulting from any action or inaction by the Mortgagor;

(i)    Location and Type of Mortgaged Property.    The Mortgaged Property is located in the state identified in the related Mortgage Loan Schedule except that with respect to real property located in jurisdictions in which the use of leasehold estates for residential properties is a widely-accepted practice, the mortgaged property may be a leasehold estate and consists of a single parcel of real property with a detached single family residence erected thereon, or a two- to four-family dwelling, or an individual residential condominium unit in a low-rise condominium project, or an individual unit in a planned unit development; provided, however, that any condominium unit or planned unit development and shall conform with the Underwriting Guidelines. In the case of any Mortgaged Properties that are manufactured homes (a "Manufactured Home Mortgage Loans"), (i) such Manufactured Home Mortgage Loan conforms with the Underwriting Guidelines, (ii) the related manufactured dwelling is permanently affixed to the land, (iii) the related manufactured dwelling and the related land are subject to a Mortgage properly filed in the appropriate public recording office and naming Seller as mortgagee, (iv) the applicable laws of the jurisdiction in which the related Mortgaged Property is located will deem the manufactured dwelling located on such Mortgaged Property to be a part of the real property on which such dwelling is located, and (v) such Manufactured Home Mortgage Loan is (x) a qualified mortgage under Section 860G(a)(3) of the Code and (y) secured by manufactured housing treated as a single family residence under Section 25(e)(10) of

-24-

the Code.  As of the date of origination, no portion of the Mortgaged Property is used for commercial purposes, and since the date of origination, no portion of the Mortgaged Property has been used for commercial purposes; provided, that Mortgaged Properties which contain a home office shall not be considered as being used for commercial purposes as long as the Mortgaged Property has not been altered for commercial purposes and is not storing any chemicals or raw materials other than those commonly used for homeowner repair, maintenance and/or household purposes;

(j)   <u>Valid Lien</u>.  The Mortgage is a valid, subsisting, enforceable and perfected first lien (with respect to a First Lien Loan) or second lien (with respect to a Second Lien Loan) on the Mortgaged Property, including all buildings and improvements on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems located in or annexed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing.  The lien of the Mortgage is subject only to:

(1)   with respect to a Second Lien Loan only, the lien of the first mortgage on the Mortgaged Property;

(2)   the lien of current real property taxes and assessments not yet due and payable;

(3)   covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to prudent mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Performing Loan and (a) specifically referred to or otherwise considered in the appraisal made for the originator of the Performing Loan or (b) which do not adversely affect the Appraised Value of the Mortgaged Property set forth in such appraisal; and

(4)   other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Performing Loan establishes and creates a valid, subsisting, enforceable and perfected first lien (with respect to a First Lien Loan) or second lien (with respect to a Second Lien Loan) and first priority (with respect to a First Lien Loan) or second priority (with respect to a Second Lien Loan) security interest on the property described therein and the Seller has full right to sell and assign the same to the Purchaser;

(k)   <u>Validity of Mortgage Documents</u>.  The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor in connection with a Performing Loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms.  All parties to the Mortgage Note, the Mortgage and any other such related agreement had legal capacity to enter into the Performing Loan and to execute and deliver the Mortgage Note, the Mortgage and any such agreement, and the Mortgage

-25-

Note, the Mortgage and any other such related agreement have been duly and properly executed by other such related parties. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading; provided, however, in connection with omissions by Mortgagors, Seller shall only be responsible if it had or should have had actual knowledge of any such omissions. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a Performing Loan has taken place on the part of any Person, including without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Performing Loan or in the application for any insurance in relation to such Performing Loan. The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein;

(l)    Full Disbursement of Proceeds. The Performing Loan has been closed and the proceeds of the Performing Loan have been fully disbursed and there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with. All costs, fees and expenses incurred in making or closing the Performing Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage;

(m)    Ownership. The Seller is the sole owner of record and holder of the Performing Loan and the indebtedness evidenced by each Mortgage Note and upon the sale of the Performing Loans to the Purchaser, the Seller will retain the Mortgage Files or any part thereof with respect thereto not delivered to the Custodian, the Purchaser or the Purchaser's designee, in trust only for the purpose of servicing and supervising the servicing of each Performing Loan. The Performing Loan is not assigned or pledged, and the Seller has good, indefeasible and marketable title thereto, and has full right to transfer and sell the Performing Loan to the Purchaser free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign each Performing Loan pursuant to this Agreement and following the sale of each Performing Loan, the Purchaser will own such Performing Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest. The Seller intends to relinquish all rights to possess, control and monitor the Performing Loan. After the Closing Date, the Seller will have no right to modify or alter the terms of the sale of the Performing Loan and the Seller will have no obligation or right to repurchase the Performing Loan, except as provided in this Agreement;

(n)    Doing Business. All parties which have had any interest in the Performing Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) (1) in compliance with any and all applicable licensing requirements of the laws of the state wherein the Mortgaged Property is located, and (2) either (i) organized under the laws of such state, or (ii) qualified to do business in such state, or (iii) a federal savings and loan association, a savings bank or a national bank having a principal office in such state, or (3) not doing business in such state;

USActive 6198171.6

(o)    LTV.  At origination, the Performing Loan had the LTV set forth on the related Mortgage Loan Schedule;

(p)    Title Insurance.  The Performing Loan is covered by an ALTA lender's title insurance policy or other generally acceptable form of policy or insurance acceptable to prudent originators of mortgage loans similar to the Performing Loans and each such title insurance policy is issued by a title insurer acceptable to prudent originators of mortgage loans similar to the Performing Loans and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns, as to the first priority lien (with respect to a First Lien Loan) or second (with respect to a Second Lien Loan) of the Mortgage in the original principal amount of the Performing Loan (or to the extent a Mortgage Note provides for negative amortization, the maximum amount of negative amortization in accordance with the Mortgage), subject only to the exceptions contained in clauses (1), (2) and (3) of paragraph (j) of this Subsection 9.02, and in the case of Adjustable Rate Mortgage Loans, against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment to the Mortgage Interest Rate and Monthly Payment.  Where required by state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance. Additionally, such lender's title insurance policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein.  The title policy does not contain any special exceptions (other than the standard exclusions) for zoning and uses and has been marked to delete the standard survey exception or to replace the standard survey exception with a specific survey reading.  The Seller, its successor and assigns, are the sole insureds of such lender's title insurance policy, and such lender's title insurance policy is valid and remains in full force and effect and will be in force and effect upon the consummation of the transactions contemplated by this Agreement.  No claims have been made under such lender's title insurance policy, and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy, including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(q)    No Defaults.  Other than payments due but not yet one calendar month or more delinquent or other delinquencies set forth on the related Mortgage Loan Schedule, there is no default, breach, violation or event which would permit acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event which would permit acceleration, and neither the Seller nor any of its affiliates nor any of their respective predecessors, have waived any default, breach, violation or event which would permit acceleration;

(r)    No Mechanics' Liens.  Except as set forth on the related Mortgage Loan Schedule, there are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under the law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage, that are not insured against by title insurance;

-27-

(s)    Location of Improvements; No Encroachments.  At the time of the origination of the Performing Loan, all improvements which were considered in determining the Appraised Value of the Mortgaged Property lay wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property that are not insured against by title insurance.  At the time of origination of the Performing Loan, no improvement located on or being part of the Mortgaged Property was in violation of any applicable zoning law or regulation;

(t)    Origination; Payment Terms.  The Performing Loan was originated by a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the Act, a savings and loan association, a savings bank, a commercial bank, credit union, insurance company, mortgage lender or other similar institution which is supervised and examined by a federal or state authority.  No Performing Loan contains terms or provisions which would result in negative amortization.  Principal payments on the Performing Loan commenced no more than sixty days after funds were disbursed in connection with the Performing Loan.  The Mortgage Interest Rate as well as, with respect to Adjustable Rate Mortgage Loans, the Lifetime Rate Cap, the Periodic Rate Floor and the Periodic Rate Cap are as set forth on the related Mortgage Loan Schedule.  The Mortgage Interest Rate is adjusted, with respect to Adjustable Rate Mortgage Loans, on each Interest Rate Adjustment Date to equal the Index plus the Gross Margin (rounded up or down to the nearest 0.125%), subject to the Periodic Rate Cap.  The Mortgage Note is payable in equal monthly installments of principal and interest, which installments of interest, with respect to Adjustable Rate Mortgage Loans, are subject to change due to the adjustments to the Mortgage Interest Rate on each Interest Rate Adjustment Date, with interest calculated and payable in arrears, sufficient to amortize the Performing Loan fully by the stated maturity date, over an original term of not more than thirty years from commencement of amortization.  Unless otherwise specified on the related Mortgage Loan Schedule, the Performing Loan is payable on the first day of each month.  There are no Convertible Mortgage Loans which contain a provision allowing the Mortgagor to convert the Mortgage Note from an adjustable interest rate Mortgage Note to a fixed interest rate Mortgage Note.  The Due Date of the first payment under the Mortgage Note is no more than 60 days from the date of the Mortgage Note;

(u)    Customary Provisions.  The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure.  Upon default by a Mortgagor on a Performing Loan and foreclosure on, or trustee's sale of, the Mortgaged Property pursuant to the proper procedures, the holder of the Performing Loan will be able to deliver good and merchantable title to the Mortgaged Property.  There is no homestead or other exemption available to a Mortgagor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage, subject to applicable federal and state laws and judicial precedent with respect to bankruptcy and right of redemption or similar law;

(v)    [Reserved];

-28-

(w)    Occupancy of the Mortgaged Property. As of the related origination date, all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities;

(x)    No Additional Collateral. The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage referred to in clause (j) above;

(y)    Deeds of Trust. In the event the Mortgage constitutes a deed of trust, a trustee, authorized and duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with the reconveyance of the deed of trust or a trustee's sale after default by the Mortgagor;

(z)    [Reserved];

(aa)    [Reserved];

(bb)    Condominiums/Planned Unit Developments. If the Mortgaged Property is a condominium unit or a planned unit development (other than a de minimis planned unit development) such condominium or planned unit development project conforms to Underwriting Guidelines. The representations and warranties required by prudent mortgage lending institutions which originate mortgage loans of the same type as the Performing Loan in the jurisdiction where the related Mortgaged Property is located with respect to such condominium or a planned unit development have been satisfied and remain true and correct;

(cc)    Transfer of Performing Loans. The Assignment of Mortgage (except with respect to any Mortgage that has been recorded in the name of MERS or its designee) with respect to each Performing Loan is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located. The transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by the Seller are not subject to the bulk transfer or similar statutory provisions in effect in any applicable jurisdiction;

(dd)    Due-On-Sale. With respect to each Fixed Rate Mortgage Loan, the Mortgage contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Performing Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the mortgagee thereunder, and to the best of the Seller's knowledge, such provision is enforceable;

(ee)    Assumability. With respect to each Adjustable Rate Mortgage Loan, the Mortgage Loan Documents provide that after the related first Interest Rate Adjustment Date, a related Performing Loan may only be assumed if the party assuming such Performing Loan meets certain credit requirements stated in the Mortgage Loan Documents;

(ff)    No Buydown Provisions; No Graduated Payments or Contingent Interests. The Performing Loan does not contain provisions pursuant to which Monthly Payments are paid

-29-

or partially paid with funds deposited in any separate account established by the Seller, the Mortgagor, or anyone on behalf of the Mortgagor, or paid by any source other than the Mortgagor nor does it contain any other similar provisions which may constitute a "buydown" provision. The Performing Loan is not a graduated payment mortgage loan and the Performing Loan does not have a shared appreciation or other contingent interest feature;

(gg)    Consolidation of Future Advances.  Any future advances made to the Mortgagor prior to the applicable Cut-off Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term.  The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first (with respect to a First Lien Loan) or second (with respect to a Second Lien Loan) lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to the secondary market.  The consolidated principal amount does not exceed the original principal amount of the Performing Loan;

(hh)    Mortgaged Property Undamaged; No Condemnation Proceedings.  The Seller has no knowledge nor has the Seller received any notification that there has been any condemnation proceedings with respect to the Mortgaged Property or any proceeding pending or, to the best of the Seller's knowledge, threatened for the total or partial condemnation of the Mortgaged Property.   As of the related Cut-off Date, except as set forth on Exhibit B to the related Assignment and Conveyance (including with respect to any Performing Loan, the broker price opinion referenced therein obtained by the Purchaser in connection with its due diligence prior to the purchase of such Performing Loan), the Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect adversely the value of the Mortgaged Property as security for the Performing Loan or the use for which the premises were intended and each Mortgaged Property is in good repair;

(ii)    Collection Practices; Escrow Deposits; Interest Rate Adjustments.  The origination, servicing and collection practices used by the Seller with respect to the Performing Loan have been in all respects in compliance with Accepted Servicing Practices, applicable laws and regulations, and have been in all respects legal and proper. Each Performing First Lien Loan is covered by a paid in full, life of loan, tax service contract.  All Escrow Payments have been collected in full compliance with state and federal law and the provisions of the related Mortgage Note and Mortgage.  An escrow of funds is not prohibited by applicable law and has been established, if applicable, in an amount sufficient to pay for every item that remains unpaid and has been assessed but is not yet due and payable.  No escrow deposits or Escrow Payments or other charges or payments due the Seller have been capitalized under the Mortgage or the Mortgage Note.

With respect to each Adjustable Rate Mortgage Loan, all Mortgage Interest Rate adjustments have been made in strict compliance with state and federal law and the terms of the related Mortgage and Mortgage Note on the related Interest Rate Adjustment Date. If, pursuant to the terms of the Mortgage Note for an Adjustable Rate Mortgage Loan,, another index was selected for determining the Mortgage Interest Rate, the same index was used with respect to each Mortgage Note which required a new index to be selected, and such selection did not conflict with the terms of the related Mortgage Note. The Seller executed and delivered any and

-30-

all notices required under applicable law and the terms of the related Mortgage Note and Mortgage regarding the Mortgage Interest Rate and, with respect to each Adjustable Rate Mortgage Loan, the Monthly Payment adjustments. Any interest required to be paid pursuant to state, federal and local law has been properly paid and credited;

(jj)     <u>Conversion to Fixed Interest Rate</u>.  With respect to Adjustable Rate Mortgage Loans, the Performing Loan is not a Convertible Mortgage Loan;

(kk)     <u>Other Insurance Policies</u>.  No action, inaction or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable, special hazard insurance policy or bankruptcy bond, irrespective of the cause of such failure of coverage.  In connection with the placement of any such insurance, no commission, fee, or other compensation has been or will be received by the Seller or by any officer, director, or employee of the Seller or any designee of the Seller or any corporation in which the Seller or any officer, director, or employee had a financial interest at the time of placement of such insurance;

(ll)     <u>No Violation of Environmental Laws</u>.  As of the related Closing Date, there is no pending action or proceeding directly involving the Mortgaged Property in which compliance with any environmental law, rule or regulation is an issue; there is no violation of any environmental law, rule or regulation with respect to the Mortgage Property; and nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation constituting a prerequisite to use and enjoyment of said property;

(mm)     <u>Servicemembers' Civil Relief Act</u>.  The Mortgagor has not notified the Seller, and the Seller has no knowledge of any relief requested or allowed to the Mortgagor under the Relief Act or any similar state statute;

(nn)     <u>Appraisal</u>.  The Mortgage File contains an appraisal of the related Mortgaged Property signed prior to the approval of the Performing Loan application by a Qualified Appraiser, duly appointed by the Seller, who had no interest, direct or indirect in the Mortgaged Property or in any loan made on the security thereof, and whose compensation is not affected by the approval or disapproval of the Performing Loan, and the appraisal and appraiser both satisfy the requirements of Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder, all as in effect on the date the Performing Loan was originated;

(oo)     <u>Disclosure Materials</u>.  The Mortgagor has, and has executed a statement to the effect that the Mortgagor has, received all disclosure materials required by applicable law and the Seller has complied with, all applicable law with respect to the making of the Performing Loans.  The Seller shall maintain such statement in the Mortgage File or the credit file;

(pp)     <u>Construction or Rehabilitation of Mortgaged Property</u>.  The Performing Loan was not made in connection with the construction or material rehabilitation of a Mortgaged Property or facilitating the trade-in or exchange of a Mortgaged Property;

(qq)     [Reserved];

-31-

(rr)    No Defense to Insurance Coverage.   No action has been taken or failed to be taken, no event has occurred and no state of facts exists or has existed on or prior to the Closing Date (whether or not known to the Seller on or prior to such date) which has resulted or will result in an exclusion from, denial of, or defense to coverage under any primary mortgage insurance (including, without limitation, any exclusions, denials or defenses which would limit or reduce the availability of the timely payment of the full amount of the loss otherwise due thereunder to the insured) whether arising out of actions, representations, errors, omissions, negligence, or fraud of the Seller, the related Mortgagor or any party involved in the application for such coverage, including the appraisal, plans and specifications and other exhibits or documents submitted therewith to the insurer under such insurance policy, or for any other reason under such coverage, but not including the failure of such insurer to pay by reason of such insurer's breach of such insurance policy or such insurer's financial inability to pay;

(ss)    Escrow Analysis.   With respect to each Mortgage, the Seller has within the last twelve months (unless such Mortgage was originated within such twelve month period) analyzed the required Escrow Payments for each Mortgage and adjusted the amount of such payments so that, assuming all required payments are timely made, any deficiency will be eliminated on or before the first anniversary of such analysis, or any overage will be refunded to the Mortgagor, in accordance with RESPA and any other applicable law;

(tt)    Prior Servicing.   Each Performing Loan has been serviced in all material respects in compliance with Accepted Servicing Practices;

(uu)    No Failure to Cure Default.   With respect to a Performing Second Lien Loan for which the Seller is also servicing the First Lien Mortgage Loan as set forth in the related Assignment and Conveyance, no senior mortgage loan is in default that has not been cured.  With respect to any other Performing Loan, the Seller has not received a written notice of default of any senior mortgage loan related to the Mortgaged Property which has not been cured;

(vv)    Credit Information.   As to each consumer report (as defined in the Fair Credit Reporting Act, Public Law 91-508) or other credit information furnished by the Seller to the Purchaser, that Seller has full right and authority and is not precluded by law or contract from furnishing such information to the Purchaser and the Purchaser is not precluded by the terms of the Mortgage Loan Documents from furnishing the same to any subsequent or prospective purchaser of such Mortgage.  The Seller shall hold the Purchaser harmless from any and all damages, losses, costs and expenses (including attorney's fees) arising from disclosure of credit information in connection with the Purchaser's secondary marketing operations and the purchase and sale of mortgages or Servicing Rights thereto;

(ww)    Leaseholds.   If the Performing Loan is secured by a long-term residential lease, (1) the lessor under the lease holds a fee simple interest in the land; (2) the terms of such lease expressly permit the mortgaging of the leasehold estate, the assignment of the lease without the lessor's consent and the acquisition by the holder of the Mortgage of the rights of the lessee upon foreclosure or assignment in lieu of foreclosure or provide the holder of the Mortgage with substantially similar protections; (3) the terms of such lease do not (a) allow the termination thereof upon the lessee's default without the holder of the Mortgage being entitled to receive written notice of, and opportunity to cure, such default, (b) allow the termination of the lease in

-32-

the event of damage or destruction as long as the Mortgage is in existence, (c) prohibit the holder of the Mortgage from being insured (or receiving proceeds of insurance) under the hazard insurance policy or policies relating to the Mortgaged Property or (d) permit any increase in rent other than pre-established increases set forth in the lease; (4) the original term of such lease is not less than 15 years; (5) the term of such lease does not terminate earlier than five years after the maturity date of the Mortgage Note; and (6) the Mortgaged Property is located in a jurisdiction in which the use of leasehold estates in transferring ownership in residential properties is a widely accepted practice;

(xx)  Prepayment Penalty.  Each Performing Loan that is subject to a prepayment penalty as provided in the related Mortgage Note in identified on the related Mortgage Loan Schedule. With respect to Performing Loans originated prior to October 1, 2002, no such Prepayment Penalty may be imposed for a term in excess of five (5) years following origination. With respect to Performing Loans originated on or after October 1, 2002, no such Prepayment Penalty may be imposed for a term in excess of three (3) years following origination;

(yy)  Predatory Lending Regulations.  No Performing Loan is a High Cost Loan or Covered Loan, as applicable, and no Performing Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act. No Performing Loan is covered by the Home Ownership and Equity Protection Act of 1994 and no Performing Loan is in violation of any comparable state or local law;

(zz)  [Reserved];.

(aaa)  [Reserved];

(bbb)  Fair Credit Reporting Act.  The Seller has, in its capacity as servicer for each Performing Loan, fully furnished, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (*e.g.,* favorable and unfavorable) on its borrower credit files to Equifax, Experian and Trans Union Credit Information Company (three of the credit repositories), on a monthly basis;

(ccc)  No Arbitration.  No Performing Loan originated on or after July 1, 2004 requires the related Mortgagor to submit to arbitration to resolve any dispute arising out of or relating in any way to the Performing Loan transaction;

(ddd)  Mortgagor Selection.  Each Mortgagor was assigned the highest credit grade available with respect to a mortgage loan product offered by such Performing Loan's originator, taking into account the credit history, debt to income ratio and loan requirement of such Mortgagor;

(eee)  [Reserved];

(fff)  Performing Loans with Prepayment Premiums.  With respect to any Performing Loan that contains a provision permitting imposition of a prepayment penalty upon a prepayment prior to maturity: (i) prior to the Performing Loan's origination, the related Mortgagor agreed to such prepayment penalty in exchange for a monetary benefit, including but

-33-

not limited to a rate or fee reduction, (ii) the related Mortgagor has available programs that offered the option of obtaining a mortgage loan that did not require payment of such a prepayment penalty and prior to the Performing Loan's origination, the Performing Loan was available to the Mortgagor with and without the prepayment penalty, (iii) the prepayment penalty was disclosed to the related Mortgagor in the Performing Loan documents pursuant to applicable state and federal law, and (iv) notwithstanding any state or federal law to the contrary, the Seller shall not impose such prepayment penalty in any instance when the mortgage debt is accelerated as the result of the related Mortgagor's default in making the Performing Loan payments;

(ggg)  Purchase of Insurance.  No Mortgagor was required to purchase any single premium credit insurance policy (e.g., life, disability, property, accident, unemployment or health insurance product) or debt cancellation agreement as a condition of obtaining the extension of credit.  No Mortgagor obtained a prepaid single-premium credit insurance policy (e.g., life, disability, property, accident, unemployment, mortgage or health insurance) in connection with the origination of the Performing Loan. No proceeds from any Performing Loan were used to purchase single premium credit insurance policies as part of the origination of, or as a condition to closing, such Performing Loan;

(hhh)  [Reserved];

(iii)  Disclosure of Fees and Charges.  All fees and charges (including finance charges), whether or not financed, assessed, collected or to be collected in connection with the origination and servicing of each Performing Loan, have been disclosed in writing to the Mortgagor in accordance with applicable state and federal law and regulation;

(jjj)  No Default Under First Lien.  With respect to each Second Lien Loan for which the Seller is acting as servicer on the related First Lien Loan, the related First Lien Loan is in full force and effect and there is no default (other than payments not yet 30 days delinquent or any other delinquency described on the Mortgage Loan Schedule), breach, violation or event which would permit acceleration existing under such first Mortgage or Mortgage Note, or any event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event which would permit acceleration thereunder.  With respect to any other Second Lien Loan, the Seller has not received any notice of defaults (other than payments not yet 30 days delinquent or any other delinquency described on the Mortgage Loan Schedule), breach, violation or event which would permit acceleration existing under such first Mortgage or Mortgage Note, and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event which would permit acceleration thereunder;

(kkk)  Right to Cure First Lien.  With respect to each Second Lien Loan, the related first lien Mortgage contains a provision which provides for giving notice of default or breach to the mortgagee under the Performing Loan and allows such mortgagee to cure any default under the related first lien Mortgage; and

(lll)  Request for Notice; No Consent Required.  With respect to any Second Lien Loan, where required or customary in the jurisdiction in which the Mortgaged Property is located, the original lender has filed for record a request for notice of any action by the related

-34-

senior lienholder, and the Seller has notified the senior lienholder in writing of the existence of the Second Lien Loan and requested notification of any action to be taken against the Mortgagor by the senior lienholder. Either (a) no consent for the Second Lien Loan is required by the holder of the related first lien or (b) such consent has been obtained and is contained in the Mortgage File.

    Subsection 9.03 Remedies for Breach of Performing Loan Representations and Warranties.

    It is understood and agreed that the representations and warranties set forth in Subsections 9.01 and 9.02 shall survive the sale of the Performing Loans to the Purchaser and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or failure to examine any Mortgage File. Upon discovery by either the Seller or the Purchaser of a breach of any of the foregoing representations and warranties, the party discovering such breach shall give prompt written notice to the other.

    Within 60 days of the earlier of either discovery by or notice to the Seller of any breach of a representation or warranty which materially and adversely affects the value of the Performing Loans or the interest of the Purchaser therein (or which materially and adversely affects the value of the applicable Performing Loan or the interest of the Purchaser in the related Performing Loan in the case of a representation and warranty relating to a particular Performing Loan), the Seller shall use its best efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, the Seller shall, at the Purchaser's option, repurchase such Performing Loan at the Repurchase Price. Notwithstanding the above sentence, within 30 days of the earlier of discovery or receipt of notice by the Seller of any breach of the representations or warranties set forth in paragraph (xx), (yy), (bbb), (ccc), (ddd), (fff), (ggg), (iii), (jjj), (kkk) or (lll) of Subsection 9.02, the Seller shall repurchase such Performing Loan at the Repurchase Price. In the event that a breach shall involve any representation or warranty set forth in Subsection 9.01, and (except as provided in the preceding sentence with respect to certain breaches for which no cure is permitted) such breach cannot be cured within 60 days of the earlier of either discovery by or notice to the Seller of such breach, all of the Performing Loans affected by such breach shall, at the Purchaser's option, be repurchased by the Seller at the Repurchase Price. However, if the breach shall involve a representation or warranty set forth in Subsection 9.02 (except as provided in the second sentence of this paragraph with respect to certain breaches) and the Seller discovers or receives notice of any such breach within 120 days of the related Closing Date, the Seller shall repurchase the deficient Performing Loan at the Repurchase Price. Any repurchase of a Performing Loan or Loans pursuant to the foregoing provisions of this Subsection 9.03 shall be accomplished by either (a) if a servicing agreement has been entered into and is in effect, deposit in the custodial account of the amount of the Repurchase Price for distribution to the Purchaser on the next scheduled Remittance Date, after deducting therefrom any amount received in respect of such repurchased Performing Loan or Loans and being held in the custodial account for future distribution or (b) if a servicing agreement has not been entered into or is no longer in effect, by direct remittance of the Repurchase Price to the Purchaser or its designee in accordance with the Purchaser's instructions.

At the time of repurchase, the Purchaser and the Seller shall arrange for the reassignment of the Deleted Mortgage Loan to the Seller and the delivery to the Seller of any documents held by the Custodian relating to the Deleted Mortgage Loan. In the event of a repurchase, the Seller shall, simultaneously with such reassignment, give written notice to the Purchaser that such repurchase has taken place and amend the related Mortgage Loan Schedule to reflect the withdrawal of the Deleted Mortgage Loan from this Agreement.

In addition to such repurchase or substitution obligation, the Seller shall indemnify the Purchaser and its present and former directors, officers, employees and agents and the Successor Servicer and its present and former directors, officers, employees and agents and hold such parties harmless against any losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Seller's representations and warranties with respect to Performing Loans contained in this Agreement or any Reconstitution Agreement. It is understood and agreed that the obligations of the Seller set forth in this Subsection 9.03 to cure, substitute for or repurchase a defective Performing Loan and to indemnify the Purchaser and Successor Servicer as provided in this Subsection 9.03 constitute the sole remedies of the Purchaser and Successor Servicer respecting a breach of the foregoing representations and warranties with respect to Performing Loans. For purposes of this paragraph "Purchaser" shall mean the Person then acting as the Purchaser under this Agreement and any and all Persons who previously were "Purchasers" under this Agreement and "Successor Servicer" shall mean any Person designated as the Successor Servicer pursuant to this Agreement and any and all Persons who previously were "Successor Servicers" pursuant to this Agreement.

Any cause of action against the Seller relating to or arising out of the breach of any representations and warranties made in Subsections 9.01 and 9.02 shall accrue as to any Performing Loan upon (i) discovery of such breach by the Purchaser or notice thereof by the Seller to the Purchaser, (ii) failure by the Seller to cure such breach or repurchase such Performing Loan as specified above, and (iii) demand upon the Seller by the Purchaser for compliance with this Agreement.

Subsection 9.04    Representations and Warranties Regarding Sub and Non Loans.

The Seller hereby represents and warrants to the Purchaser that, as to each Sub and Non Loan, as of the related Closing Date for such Sub and Non Loan, other than as disclosed to the Purchaser in the related Assignment and Conveyance, the related Servicing File or the servicing comments delivered to the Purchaser in connection with the Purchaser's due diligence with respect to any Sub and Non Loan prior to purchasing such Sub and Non Loan:

(a)    Sub and Non Loans as Described. The information set forth in the related Mortgage Loan Schedule and the Sub and Non Loan data delivered to the Purchaser is complete, true and correct in all material respects;

(b)    Compliance with Purchase Price and Terms Letter: The Sub and Non Loan is in material compliance with all requirements set forth in the related Purchase Price and

-36-

Terms Letter, and the characteristics of the related Mortgage Loan Package as set forth in the related Purchase Price and Terms Letter are true and correct in all material respects;

(c) <u>Payments Current</u>. Except as set forth in the related data tape, Mortgage Loan Schedule or in the Purchase Price and Terms Letter, all payments required to be made up to the close of business on the related Closing Date for such Sub and Non Loan under the terms of the Mortgage Note have been made;

(d) <u>Location and Type of Mortgaged Property</u>. The Mortgaged Property is located in the state identified in the related Mortgage Loan Schedule and contains no manufactured housing or REO Properties. As of the related date of origination, no portion of the Mortgaged Property is used for commercial purposes, and since the related date of origination, no portion of the Mortgaged Property had been used for commercial purposes; provided, that Mortgaged Properties which contain a home office shall not be considered as being used for commercial purposes as long as the Mortgaged Property has not been altered for commercial purposes and is not storing any chemicals or raw materials other than those commonly used for homeowner repair, maintenance and/or household purposes;

(e) <u>No Defenses</u>. The Sub and Non Loan is not subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto, and no Mortgagor was a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Sub and Non Loan was originated other than bankruptcy proceedings settled in connection therewith and approved by the bankruptcy trustee as necessary;

(f) <u>Compliance with Applicable Laws</u>. The requirements of any federal, state or local law including, without limitation, usury, truth in lending, real estate settlement procedures, consumer credit protection, equal credit opportunity, fair housing, disclosure laws, or all applicable predatory, abusive and fair lending laws applicable to the origination and servicing of mortgage loans of a type similar to the Sub and Non Loans have been complied with in all material respects and the consummation of the transactions contemplated hereby will not involve the violation of any such laws. In addition, no predatory, abusive or deceptive lending practices, including but not limited to, the extension of credit to a Mortgagor without regard for the Mortgagor's ability to repay the Sub and Non Loan and the extension of credit to a Mortgagor which has no tangible net benefit to the Mortgagor, were employed in connection with the origination of the Sub and Non Loan;

(g) <u>Full Disbursement of Proceeds</u>. The proceeds of the Sub and Non Loan have been fully disbursed to or for the account of the Mortgagor and there is no obligation for the Mortgagee to advance additional funds thereunder and any and all requirements as to completion of any on site or off site improvement and as to disbursements of any escrow funds therefor have been complied with;

-37-

(h)    Ownership. The Seller is the sole legal, beneficial and equitable owner of the Mortgage Note and the Mortgage. The Seller has full right and authority under all governmental and regulatory bodies having jurisdiction over such Seller, subject to no interest or participation of, or agreement with, any party, to transfer and sell the Sub and Non Loan to the Purchaser pursuant to this Agreement free and clear of any encumbrance or right of others, equity, lien, pledge, charge, mortgage, claim, participation interest or security interest of any nature (collectively, a "Lien"); and immediately upon the transfers and assignments herein contemplated, the Seller shall have transferred and sold all of its right, title and interest in and to each Sub and Non Loan and the Purchaser will hold good, marketable and indefeasible title to, and be the owner of, each Sub and Non Loan subject to no Lien other than any Lien arising from the Purchaser's ownership of the Sub and Non Loan;

(i)    Payment Terms. Except with respect to interest-only Sub and Non Loans, principal payments on the Sub and Non Loan shall commence (with respect to any newly originated Sub and Non Loans) or commenced no more than sixty days after the proceeds of the Sub and Non Loan were disbursed. The Sub and Non Loan bears interest at the Mortgage Interest Rate. With respect to each Sub and Non Loan, other than interest-only Sub and Non Loans, the Mortgage Note is payable on the first day of each month in Monthly Payments, which, (A) in the case of a Fixed Rate Mortgage Loan, are sufficient to fully amortize the original principal balance over the original term thereof and to pay interest at the related Mortgage Interest Rate, (B) in the case of an Adjustable Rate Mortgage Loan, are changed on each Adjustment Date, and in any case, are sufficient to fully amortize the original principal balance over the original term thereof and to pay interest at the related Mortgage Interest Rate and (C) in the case of a Balloon Mortgage Loan, are based on a fifteen (15), thirty (30), forty (40) or fifty (50) year amortization schedule, as set forth in the related Mortgage Note, and a final monthly payment substantially greater than the preceding monthly payment which is sufficient to amortize the remaining principal balance of the Balloon Mortgage Loan and to pay interest at the related Mortgage Interest Rate. The Index for each Adjustable Rate Mortgage Loan is as defined in the related Purchase Price and Terms Letter and the Mortgage Loan Schedule. With respect to each Sub and Non Loan identified on the Mortgage Loan Schedule as an interest-only Sub and Non Loan, the interest-only period shall not exceed the period specified on the Mortgage Loan Schedule. No Sub and Non Loan is a Convertible Mortgage Loan;

(j)    Collection Practices; Prior Servicing. The origination and collection practices used by the Seller with respect to each Mortgage Note and Mortgage prior to the Closing Date have been in all material respects legal, proper, prudent and customary in the mortgage origination and servicing industry. The Sub and Non Loan has been serviced by the Seller and any predecessor servicer in accordance with the terms of the Mortgage Note, applicable laws and Accepted Servicing Practices;

(k)    Customary Provisions. The Mortgage and related Mortgage Note contain customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (a) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (b) otherwise by judicial foreclosure. There is no homestead or other exemption available to a Mortgagor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage, subject to applicable federal

-38-

and state laws and judicial precedent with respect to bankruptcy and right of redemption or similar law;

(l)    <u>No Buydown Provisions; No Graduated Payments or Contingent Interests</u>. No Sub and Non Loan contains provisions pursuant to which Monthly Payments are (a) paid or partially paid with funds deposited in any separate account established by the Seller, the Mortgagor, or anyone on behalf of the Mortgagor, (b) paid by any source other than the Mortgagor or (c) contains any other similar provisions which may constitute a "buydown" provision. The Sub and Non Loan is not a graduated payment mortgage loan and the Sub and Non Loan does not have a shared appreciation or other contingent interest feature;

(m)    <u>Origination of Sub and Non Loans in Texas</u>. Each Sub and Non Loan originated in the state of Texas pursuant to Article XVI, Section 50(a)(6) of the Texas Constitution (a "<u>Texas Refinance Loan</u>") has been originated in compliance with the provisions of Article XVI, Section 50(a)(6) of the Texas Constitution, Texas Civil Statutes and the Texas Finance Code. With respect to each Texas Refinance Loan that is a cash out refinancing, the related Mortgage Loan Documents state that the Mortgagor may prepay such Texas Refinance Loan in whole or in part without incurring a Prepayment Penalty. The Seller does not collect any such Prepayment Penalties in connection with any such Texas Refinance Loan;

(n)    <u>Calculation of Interest</u>. Interest on each Sub and Non Loan is calculated on the basis of a 360 day year consisting of twelve 30 day months;

(o)    <u>Conversion to Fixed Interest Rate</u>. None of the Adjustable Rate Mortgage Loans include an option to convert to a Fixed Rate Mortgage Loan;

(p)    <u>Maturity Limitation</u>. No Sub and Non Loan had an original term to maturity of more than thirty (30) years;

(q)    <u>Due-On-Sale</u>. Except as otherwise set forth on the data tape, the related Mortgage Loan Schedule or the related Purchase Price and Terms Letter, each Mortgage contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the related Mortgage Loan in the event the related Mortgaged Property is sold without the prior consent of the mortgagee thereunder;

(r)    <u>Prepayment Penalty</u>. No Sub and Non Loan originated prior to October 1, 2002 has a Prepayment Penalty longer than five years after its origination; and no Sub and Non Loan originated after October 1, 2002 has a Prepayment Penalty longer than three years after its origination;

(s)    <u>Predatory Lending Regulations</u>. No Sub and Non Loan is a High Cost Loan or Covered Loan, as applicable, and no Sub and Non Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act. No Sub and Non Loan is covered by the Home Ownership and Equity Protection Act of 1994 and no Sub and Non Loan is in violation of any comparable state or local law;

-39-

(t)    MERS.  With respect to each MERS Sub and Non Loan, a mortgage identification number ("MIN") has been assigned by MERS and such MIN is provided on the related Mortgage Loan Schedule;

(u)    No Outstanding Charges.  As of the related origination date, and to Seller's knowledge as of the related Closing Date, except as set forth on the related Mortgage Loan Schedule, there are no defaults in complying with the terms of the Mortgage, and all taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable.  The Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Sub and Non Loan, except for interest accruing from the date of the Mortgage Note or date of disbursement of the Sub and Non Loan proceeds, whichever is earlier, to the day which precedes by one month the Due Date of the first installment of principal and interest, including, without limitation, taxes and insurance payments, the Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Sub and Non Loan;

(v)    Hazard Insurance.  As of the related origination date, pursuant to the terms of the Mortgage, all buildings or other improvements upon the Mortgaged Property are insured by a generally acceptable insurer against loss by fire, hazards of extended coverage and such other hazards as are provided for in the Underwriting Guidelines and by lenders of similar mortgage loans in the secondary market.  If required by the National Flood Insurance Act of 1968, as amended, each Sub and Non Loan is covered by a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration in effect which policy conforms to those obtained by prudent mortgage lending institutions which originate mortgage loans of the same type as such Sub and Non Loan in the jurisdiction where the related Mortgaged Property is located.  All individual insurance policies contain a standard mortgagee clause naming the Seller and its successors and assigns as mortgagee, and all premiums thereon have been paid and such policies may not be reduced, terminated or cancelled without 30 days' prior written notice to the mortgagee.  The Mortgage obligates the Mortgagor thereunder to maintain the hazard insurance policy at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor.  Where required by state law or regulation, the Mortgagor has been given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering a condominium, or any hazard insurance policy covering the common facilities of a planned unit development.  The hazard insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of the Purchaser upon the consummation of the transactions contemplated by this Agreement.  The Seller has not engaged in, and has no knowledge of the Mortgagor's having engaged in, any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of such policy including, without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received,

-40-

retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(w)    <u>No Satisfaction of Mortgage</u>.  The Mortgage has not been satisfied, canceled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, except as required by a title insurer, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission;

(x)    <u>Valid Lien</u>.  The Mortgage is a valid, subsisting, enforceable and perfected first lien (with respect to a First Lien Loan) or second lien (with respect to a Second Lien Loan) on the Mortgaged Property, including all buildings and improvements on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems located in or annexed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing.  The lien of the Mortgage is subject only to:

(1)    with respect to a Second Lien Loan only, the lien of the first mortgage on the Mortgaged Property;

(2)    the lien of current real property taxes and assessments not yet due and payable;

(3)    covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to prudent mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Sub and Non Loan and (a) specifically referred to or otherwise considered in the appraisal made for the originator of the Sub and Non Loan or (b) which do not adversely affect the Appraised Value of the Mortgaged Property set forth in such appraisal; and

(4)    other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Sub and Non Loan establishes and creates a valid, subsisting, enforceable and perfected first lien (with respect to a First Lien Loan) or second lien (with respect to a Second Lien Loan) and first priority (with respect to a First Lien Loan) or second priority (with respect to a Second Lien Loan) security interest on the property described therein and the Seller has full right to sell and assign the same to the Purchaser;

(y)    <u>Validity of Mortgage Documents</u>.  The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor in connection with a Sub and Non Loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms.  All parties to the Mortgage Note, the Mortgage and any other such related agreement had legal capacity to enter into the Sub and Non Loan and to

-41-

execute and deliver the Mortgage Note, the Mortgage and any such agreement, and the Mortgage Note, the Mortgage and any other such related agreement have been duly and properly executed by other such related parties. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading; provided, however, in connection with omissions by Mortgagors, Seller shall only be responsible if it had or should have had actual knowledge of any such omissions. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a Sub and Non Loan has taken place on the part of Seller in connection with the origination of the Sub and Non Loan or in the application of any insurance in relation to such Sub and Non Loan. To the Seller's knowledge, no fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a Sub and Non Loan has taken place on the part of any Person, including without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Sub and Non Loan or in the application for any insurance in relation to such Sub and Non Loan; provided, however, that the foregoing knowledge qualifier does not apply to identity fraud. The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein;

(z)    <u>Title Insurance</u>. With respect to Sub and Non Loans that are First Lien Loans, each such Sub and Non Loan is covered by an ALTA lender's title insurance policy or other generally acceptable form of policy or insurance acceptable to prudent originators of mortgage loans similar to such Sub and Non Loans and each such title insurance policy is issued by a title insurer acceptable to prudent originators of mortgage loans similar to such Sub and Non Loans and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the Sub and Non Loan (or to the extent a Mortgage Note provides for negative amortization, the maximum amount of negative amortization in accordance with the Mortgage), subject only to the exceptions contained in clauses (1), (2) and (3) of paragraph (x) of this <u>Subsection 9.04</u>, and in the case of Adjustable Rate Mortgage Loans, against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment to the Mortgage Interest Rate and Monthly Payment. Where required by state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance. Additionally, such lender's title insurance policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein. The title policy does not contain any special exceptions (other than the standard exclusions) for zoning and uses and has been marked to delete the standard survey exception or to replace the standard survey exception with a specific survey reading. The Seller, its successor and assigns, are the sole insureds of such lender's title insurance policy, and such lender's title insurance policy is valid and remains in full force and effect and will be in force and effect upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such lender's title insurance policy, and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy, including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller;

-42-

    (aa)   <u>No Mechanics' Liens</u>.  As of the related origination date, except as set forth on the related Mortgage Loan Schedule, there were no, and to the Seller's knowledge as of the Closing Date there are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under the law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage, that are not insured against by title insurance;

    (bb)   <u>Occupancy of the Mortgaged Property</u>.  As of the related origination date, all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities;

    (cc)   <u>Condominiums/Planned Unit Developments</u>.  If the Mortgaged Property is a condominium unit or a planned unit development (other than a de minimis planned unit development) such condominium or planned unit development project conforms to Underwriting Guidelines.  The representations and warranties required by prudent mortgage lending institutions which originate mortgage loans of the same type as the Sub and Non Loan in the jurisdiction where the related Mortgaged Property is located with respect to such condominium or a planned unit development have been satisfied and remain true and correct;

    (dd)   <u>Transfer of Sub and Non Loans</u>.  The Assignment of Mortgage (except with respect to any Mortgage that has been recorded in the name of MERS or its designee) with respect to each Sub and Non Loan is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located.  The transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by the Seller are not subject to the bulk transfer or similar statutory provisions in effect in any applicable jurisdiction;

    (ee)   <u>Assumability</u>.  With respect to each Adjustable Rate Mortgage Loan, the Mortgage Loan Documents provide that after the related first Interest Rate Adjustment Date, a Sub and Non Loan may only be assumed if the party assuming such Sub and Non Loan meets certain credit requirements stated in the Mortgage Loan Documents;

    (ff)   <u>Mortgaged Property Undamaged; No Condemnation Proceedings</u>.  The Seller has no knowledge nor has the Seller received any notification that there have been any condemnation proceedings with respect to the Mortgaged Property or any proceeding pending or, to the best of the Seller's knowledge, threatened for the total or partial condemnation of the Mortgaged Property.  The Seller has no knowledge nor has the Seller received any notification, as of the related Cut-off Date, and except as set forth on <u>Exhibit B</u> to the related Assignment and Conveyance (including with respect to any Sub and Non Loan, the broker price opinion referenced therein obtained by the Purchaser in connection with its due diligence prior to the purchase of such Sub and Non Loan), that the  Mortgaged Property, including the interior, is damaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect adversely the value of the Mortgaged Property as security for the Sub and Non Loan or the use for which the premises were intended, or that each Mortgaged Property is not in good repair;

USActive 6198171.6